UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| DAVID A. ALVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-11308-LTS |
| | ) | |
| MASSACHUSETTS STATE POLICE, | ) | |
| PAUL BAKER, and | ) | |
| WILLIAM DONNELLY, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON DEFENDANT
PAUL BAKER'S MOTION FOR SUMMARY JUDGMENT

April 9, 2014

SOROKIN, C.M.J.

In this civil action, Plaintiff, David Alves, filed a two-count Complaint against the Defendants alleging negligence pursuant to M.G.L. c. 258 (Count I) and false arrest in violation of 42 U.S.C. § 1983 (Count II), with respect to a controlled delivery of an Express Mail package containing marijuana. Defendant Paul Baker has filed a Motion for Summary Judgment (Doc. No. 31) as to both Counts. For the reasons that follow, Defendant's Motion is ALLOWED.

I. BACKGROUND

A. Procedural History

On June 29, 2012, Alves filed his Complaint in the Massachusetts Superior Court of Bristol County. Doc. No. 1-2 at 1. Baker then filed notice of removal to this Court on July 18, 2012, leaving in state court Alves' claims against the Massachusetts State Police. Doc. No. 1 and Electronic Order at October 9, 2012. By stipulation of the parties, Defendant William

Donnelly was dismissed out with prejudice on January 27, 2014. Doc. No. 30. Baker has now moved for Summary Judgment as to both Counts.

B. Facts

Baker submitted a Statement of Uncontested Facts. Doc. No. 33. Alves failed to respond. Thus, Baker's facts are deemed admitted. D. Mass. L.R. 56.1. Alves submitted his own Statement of Facts, Doc. No. 36, to which Baker responded. The following facts are either undisputed or Alves' facts with all reasonable inferences drawn in Alves' favor.

The Plaintiff, David A. Alves, resides in Taunton, Massachusetts. Doc. No. 1-1 ¶ 3. Defendant Paul Baker is a Trooper with the Massachusetts State Police. Id. ¶ 4. On January 13, 2011, the United States Postal Service in Rhode Island received an Express Mail package that it believed might contain drugs. Doc. No. 33 ¶ 2. The package weighed "almost 45 pounds," had been sent overnight at a cost of $213.55, and was addressed to "John Couture, 443 Weir Street, Taunton, MA, 02780." Id. ¶ 3, 5. John Kehoe, a Postal Inspector with the United States Postal Service, contacted the purported senders, Barbara and Mike Walker in Vallejho, California, who denied having sent any such package. Id. ¶¶ 1, 4, 6. The mail carrier for the building did not recognize "John Couture" as a mail recipient at that building. Id. ¶ 9. There was a Hank Couture receiving mail in this building. Doc. No. 36 ¶ 4. In Inspector Kehoe's training and experience, such packages are used to ship drugs, often using fictitious addressee names. Doc. No. 33 ¶ 8. At the request of Inspector Kehoe, Rhode Island State Police performed a canine check of the package which signaled an alert to marijuana. Id. ¶ 7.

Inspector Kehoe successfully applied for a warrant to search the package. Id. ¶¶ 10, 11. The search revealed that the package contained approximately twenty-five (25) pounds of marijuana, with a street value of roughly thirty-five (35) thousand dollars. Id. ¶ 12. On the same

day, Trooper Baker sought and received a state court anticipatory warrant to effect a controlled delivery (and subsequent retrieval) of the package to 443 Weir Street. Id. ¶ 14; Doc. No. 33-6 at 2. Baker's application referred to a warrant to be executed at "44 Weir Street" (a single typographical error), but otherwise referred to 443 Weir Street. Doc. No. 33 ¶¶ 17, 18; Doc. No. 33-6 at 2.

> The warrant issued by the state court authorized a search for the following property:
>
> All controlled substances which have been manufactured, dispensed, distributed, acquired, in violation of Chapter 94C, specifically Marijuana, a Class D substance, which is packaged inside of a Postal Package bearing the tracking number of EG821302754US, addressed to John Couture 443 Weir Street, Taunton, MA, and found to contain Marijuana. This will be anticipatory warrant with the triggering event being the acceptance or acquisition of the package listed above. The warrant will be for the retrieval of the above mentioned package containing Marijuana.
>
> The warrant authorized the search for the package addressed to 443 Weir Street at:
>
> 44 Weir Street, Taunton, MA. A gray, two story, multi-unit building, with white trim and a gray front door that faces Weir Street. The driveway is to the left of the building when facing the front door. There is a 443 to the right side of the front door facing Weir Street. Other officers involved in this investigation are familiar with the residence.

Doc. No. 33-6 at 2. The "triggering event" of the anticipatory warrant was the "acceptance or acquisition of the package" and the scope of the search included "[a]nyone who accepts the package for 443 Weir Street[,]" or "any person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered." Id.

Four hundred and forty-three Weir Street is a three-story multifamily home located at the corner of Weir and Forest Streets in Taunton, MA. Doc. No. 33 ¶ 21. The building faces Weir Street and displays a large number 443 on the Weir Street side. Id. ¶ 22. There are two apartments on the Forrest Street side of 443 Weir Street, numbered 2 and 4. Id. ¶¶ 31, 32.

3

The controlled delivery was set to be executed no later than 3:00 PM, the time guaranteed for Express Mail service, by Inspector Kehoe, who was wearing a wire which broadcast to Trooper Baker and other nearby State and local Police Officers. Id. ¶¶ 25, 28, 30. Shortly before 2:30 PM, Alves was seen standing outside the building on the Forrest Street side apparently looking for something. Id. ¶ 34; Doc. No. 33-11. For reasons unknown, Inspector Kehoe chose to attempt delivery of the package to the apartments on the Forrest Street side of the building rather than the Weir Street side. Doc. No. 33 ¶ 36; Doc. No. 33-7 ¶ 8. He first knocked on the door at Apartment 4, but received no response. Doc. No. 35-7 at 16, ll. 18-24.

Though unknown to the Officers at the time, Apartment 2 was leased to John Rodriques.[1] Doc. No. 33 ¶ 33. When Inspector Kehoe knocked at Apartment 2, Alves answered the door. Id. ¶ 35. Inspector Kehoe attested that he "asked Mr. Alves if he was waiting for a package from California, and he said yeah[,]" Doc. No. 35-7 at 17, ll. 2-3, taking the postal slip for signature. Id. ¶ 41. The signature slip did not list an addressee's name or address. Doc. No. 36 ¶¶ 5, 6; Doc. No. 35 at 9. Rodriques went to the door, signed for the delivery, and went to the street to retrieve the package from the postal truck. Doc. No. 33 ¶ 42. He then took the package into the apartment. Doc. No. 33 ¶ 44. Alves did not touch the package.[2] Doc No. 36 ¶ 19. When Rodriques accepted the package, he asked Kehoe what was in the box, and Kehoe told him he did not know. Doc. No. 36 ¶ 12.[3] Shortly after Rodriques took the package into the apartment, the Officers executed the warrant and entered the apartment. Doc. No. 33 ¶ 44. Alves was in the living room. Doc. No. 36 ¶ 21. The Officers secured oral and written consent from Rodriques to

---

[1] While the spelling of Mr. Rodriques' name varies throughout the papers, his MASS EBT DTA card and his Massachusetts Transportation Access Pass indicate the spelling used herein. Doc. No. 37-1.
[2] Baker admitted that Alves did not move the package into the apartment. Doc. No. 36 ¶ 19. Further, Baker did not see Alves pick up the package. Id. ¶ 20.
[3] In this document, Baker's response to Alves' statement of facts, there are two paragraphs labeled 13 and no paragraph labeled 12. This citation refers to the first paragraph 13 which corresponds to paragraph 12 in Alves' statement of facts.

4

perform a complete search of the premises and property. Id. ¶ 46; Doc. No. 33-9 at 69, ll. 11-16; Doc. No. 33-11. The package was in the apartment unopened. Doc. No. 33 ¶ 45. The apartment smelled of stale as well as freshly burnt marijuana. Doc. No. 33 ¶ 47; Doc. No. 33-7 ¶ 11. The consent search of the apartment revealed a granite box in the living room containing wrappers, cigars, a marijuana grinder, marijuana seeds, and marijuana roaches, Doc. No. 36 ¶ 32 and Doc. No. 35-3 at 3, one pill container located in a bedroom dresser containing marijuana roaches, several glassine bags with marijuana seeds found on the top right night stand, one orange sheet containing narcotics "cuff sheet" on the desk in the bedroom, one digital scale located in a desk drawer stand, and one seed catalogue from TH seeds (marijuana booklet) located on the bedroom desk. Doc. No. 36 ¶ 33; Doc. No. 35-3 at 3; Doc. No. 33 ¶ 49. Rodriques had $354.00 in cash, and Alves had two cell phones. Doc. No. 33 ¶ 50. That there was marijuana in the apartment was evident to anyone present. Id. ¶ 55.

Rodriques claimed he was expecting a package from Sunny Sport of California containing a replacement part for his scooter,[4] the weight of which Rodriques estimated to be four to five pounds, whereas the package of marijuana weighed almost forty-five pounds. Id. ¶¶ 52, 53. Alves also claimed that Rodriques was expecting motorcycle parts from California. Id. ¶ 57. Alves was arrested and charged with violations of M.G.L. c. 94C §§ 32C(a) (possession with intent to distribute a Class D substance), 32J (controlled substances in a school zone), and 40 (conspiracy to violate drug laws). Id. ¶ 54. Detective Lieutenant Andrade and Sergeant Dolan, the ranking officers present, participated in and concurred with the decision that there was probable cause to arrest Alves. Id. ¶¶ 56, 59; Doc. No. 33-8 at 2; Doc. No. 33-7 at 2. Alves had prior convictions for both heroin and cocaine which were expressly known by Andrade at the time of Alves' arrest, Doc. No. 33-8 at 1, and were a factor in Baker's own evaluation of

---

[4] Sometimes referred to in the record as Rodriques' motorcycle.

probable cause to arrest Alves. Doc. No. 33 ¶ 55; Doc. No. 33-5 at 18, ll. 4-10. The charges against Alves were eventually dismissed.

II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); accord Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009).

There must be "sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). For a factual dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to

resolve the issue in favor of either side." Nat'l Amusements, Inc., 43 F.3d at 735 (internal citation omitted).

III.  DISCUSSION

As a preliminary matter, Alves concedes that there is no cause of action against Baker for negligence pursuant to M.G.L. c. 258, the Massachusetts Tort Claims Act. Therefore, Baker's Motion for Summary Judgment with respect to Count I is ALLOWED.

False arrest in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983

A.  *Probable Cause*

Alves argues that probable cause to arrest him did not exist because (1) the search was unlawful since the delivery was made to the wrong address and (2) Alves never had actual or constructive possession of the package of marijuana.

Probable cause to arrest without a warrant exists "where reasonably trustworthy facts and circumstances would enable a reasonably prudent person to believe that the arrestee has committed a crime (even if it differs from the one named by police during the arrest or booking)." Robinson v. Cook, 706 F.3d 25, 33 (1st Cir. 2013), cert. denied, 133 S. Ct. 2831 (2013) (citing Devenpeck v. Alford, 543 U.S. 146, 152-54 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.")). The analysis "'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (internal citation omitted). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts[,]" Illinois v. Gates, 462 U.S. 213, 232 (1983), and "'must be evaluated in light of the totality of

7

circumstances[,]'" United States v. Torres-Maldonado, 14 F.3d 95, 105 (1st Cir. 1994) (quoting United States v. Uricoechea-Casallas, 946 F.2d 162, 165 (1st Cir. 1991)). "'[T]he existence of probable cause is to be evaluated on the basis of the collective information of the law enforcement officers engaged in a particular investigation.'" United States v. Diallo, 29 F.3d 23, 25-26 (1st Cir. 1994) (quoting United States v. Curry, 751 F.2d 442, 446 (1st Cir. 1984)).

First, Alves argues that the entry upon Apartment 2 was unlawful, because it was made at the "wrong address," and therefore, the contraband found in the consent search that was not in plain view cannot constitute probable cause. However, Baker's anticipatory warrant gave him authority to search as soon as anyone accepted the package at 443 Weir Street. Doc. No. 33-1 at 14. It also gave him authority to retrieve the package once it was accepted. Id. The package was addressed to 443 Weir Street, with no apartment or unit number indicated. In his warrant application, Baker described 443 Weir as a multi-unit building and did not confine his request to a particular unit number or apartment. Id. Alves contends that the apartments facing Forrest Street have Forrest Street addresses, and therefore, could not come within the authority of the search warrant. Those apartments, however, are contained within the multi-unit building at 443 Weir Street as Baker described it in his warrant application. Furthermore, the only address pertaining to the building which was known at the time to the Officers, including Baker, was the Weir Street address. Doc. No. 33 ¶ 24; Doc. No. 33-7 at 2. Finally, Alves has no standing to challenge the fruits of the consent search or of the package itself, as he asserts no interest in either the apartment or the package.[5] See Rakas v. Illinois, 439 U.S. 128, 148 (1978).

Second, Alves contends that he could not have been considered to be in possession of the marijuana because: (1) he did not sign for the package or open it; (2) the package was addressed

---

[5] Alves was neither the lessee nor a resident of Apartment 2, and had no other indicia of any expectation of privacy in the apartment.

to someone other than either Alves or Rodriques; (3) there was no evidence that Alves knew what was in the package; and (4) there was no evidence that either Alves or Rodriques knew the package was "incorrectly addressed." The probable cause to arrest standard, however, does not require proof beyond a reasonable doubt of Alves' actual or constructive possession of the package of marijuana, and Alves cites only to Massachusetts cases that involve proof beyond a reasonable doubt. See, e.g., Com. v. Frongillo, 66 Mass. App. Ct. 677 (2006); Com. v. Gonzalez, 42 Mass. App. Ct. 235 (1997). Moreover, all Baker needed was probable cause to believe Alves conspired to violate M.G.L. c. 94C. Conspiracy does not require proof of possession, either actual or constructive. M.G.L. c. 94C, § 40; Com. v. Deagle, 10 Mass. App. Ct. 563, 569 (1980) (conspiracy to possess with intent to distribute is agreement to possession, not possession itself).

There was more than sufficient information available to Baker and the other Officers at the time of the delivery and search to support probable cause to arrest Alves on conspiracy to violate the drug laws. Alves initially answered the door and took the package slip from Inspector Kehoe. He said he was expecting a package from California, the originating state of the package of marijuana. He brought Rodriques to the door to accept the package. Both Alves and Rodriques claimed Rodriques was expecting a scooter/motorcycle part from a company in California. Rodriques signed for the package and then took it into his apartment despite it being addressed to John Couture at 443 Weir Street and sent from Barbara and Mike Walker rather than from the Sunny Sport scooter/motorcycle company. In this context, paying over $200 for shipment of a scooter/motorcycle part, that arrives on the same day and from the same state as the marijuana, tends to support a finding of probable cause. Neither Alves nor Rodriques seemed surprised at the execution of the warrant. Alves refused to answer questions as to why

9

he was present in the apartment. Doc. No. 33 ¶ 55. The apartment smelled of both stale and freshly burnt marijuana, which the Officers had been trained to recognize. In particular, Baker had "extensive experience and training in drug trafficking, identification of illegal drugs, packaging and shipment of those substances, tactics used by distributors of controlled substances and the value of those substances." Doc. No. 33 ¶ 15. There was drug paraphernalia in both the living room and a bedroom of the apartment, Doc. No. 35-3, including a digital scale and a narcotics cuff sheet, signs of the drug distribution trade, and Rodriques had $354 in cash on his person. See United States v. Hicks, 575 F.3d 130, 140 (1st Cir. 2009). Alves had two cell phones in his possession. Second untraceable cell phones are often used in drug transactions. See United States v. Portalla, 496 F.3d 23, 25-27 (1st Cir. 2007). Officers were aware that Alves had prior convictions for both heroin and cocaine, which indicated that Alves had knowledge of the drug trade. See Hicks, 575 F.3d at 142. The ranking Officers present, Detective Lieutenant Andrade and Sergeant Dolan, brought their information to bear and agreed that probable cause existed to arrest Alves. See generally Doc. Nos. 33, 33-7, 33-8.

"[P]robable cause must exist with respect to each person arrested, and 'a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.'" United States v. Martinez-Molina, 64 F.3d 719, 726 (1st Cir. 1995). Alves, however, was not merely in the vicinity of Rodriques, who accepted the package. Alves clearly exhibited anticipation of, knowledge of, and interest in a package police knew to contain marijuana. Moreover, he provided unconvincing explanations as to any mistake he might have made concerning the package and provided no other explanation of why he was in the apartment. Given the totality of the circumstances it was objectively reasonable for the Officers, including Baker, to conclude probable cause supported the belief that Alves

10

conspired to violate M.G.L. c. 94C.  See Robinson, 706 F.3d at 33; United States v. Sepulveda, 102 F.3d 1313, 1316 (1st Cir. 1996) (though defendant might have been innocent visitor, probable cause requires only "reasonable grounds to believe" defendant committed crime); Martinez-Molina, 64 F.3d at 727 (exemplifying probable cause using case where man crossing border at same time as woman carrying narcotics in purse, both telling same unusual story, exhibited more than momentary, random, or apparently innocent association) (citing United States v. Patrick, 899 F.2d 169 (2d Cir. 1990)).

    B.  *Qualified Immunity*

Baker correctly asserts that were there any question as to probable cause in this case, he would be entitled to qualified immunity.  Qualified immunity protects police officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Mlodzinski v. Lewis, 648 F.3d 24, 32 (1st Cir. 2011).  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Stanton v. Sims, 134 S. Ct. 3, 5 (2013) (citing Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011)).  "For a plaintiff to overcome a qualified immunity defense, he must show that his allegations, if true, establish a constitutional violation; that the right was clearly established; and that a reasonable official would have known that his actions violated the constitutional right at issue."  Mihos v. Swift, 358 F.3d 91, 98-99 (1st Cir. 2004).  Alves has not shown that Baker was incompetent or knowingly violated the law.  For the reasons discussed above, a reasonable officer could have believed that Alves was involved in the receipt of twenty-five pounds of marijuana intended for distribution, and that this constituted probable cause to arrest Alves.

IV.     CONCLUSION

For the foregoing reasons, Defendant Paul Baker's Motion for Summary Judgment (Doc. No. 31), is ALLOWED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge